IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                          No.    03-cr-1832 RB
                                                                   16-cv-0661 RB/SMV

MARCELLO JIMENEZ,

    Defendant.

**MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before me on Defendant Marcello Jimenez's Motion to Correct Sentence under 28 U.S.C. § 2255 [CR Doc. 77; CV Doc. 1], filed on June 24, 2016. The government responded on July 29, 2016. [CR Doc. 84; CV Doc. 8]. Mr. Jimenez replied on August 27, 2016. [CR Doc. 90; CV Doc. 14]. The Court referred this matter to me for findings and a recommended disposition. [CR Doc. 92; CV Doc. 17]. Having considered the briefing, the relevant portions of the underlying criminal record, the relevant authorities, and being otherwise fully advised in the premises, I find that Mr. Jimenez's underlying conviction for violating NMSA 1978 § 30-16-3(B) qualified as a violent felony only under the "residual clause" (and not the "enumerated" clause) of the Armed Career Criminal Act ("ACCA") 18 U.S.C. § 924(e)(2)(B). Therefore, pursuant to *Johnson v. United States* and *Welch v. United States*, his sentence is unconstitutional. His motion should be granted, and he should be resentenced as expeditiously as possible.

## Background

Mr. Jimenez was charged by a Superseding Indictment on November 5, 2003, with one count of being a felon in possession of firearms and one count of being a felon in possession of ammunition, 18 U.S.C. §§ 922(g)(1) and 924(e). [CR Doc. 14]. He was convicted by a jury on both counts on April 16, 2004. [CR Doc. 36]. United States Probation and Pretrial Services submitted a Presentence Report ("PSR") to the Court on June 17, 2004. PSR at 2. The PSR indicated that Mr. Jimenez qualified as an armed career criminal under ACCA because he had four prior "violent felony" convictions: three for non-residential burglary and one for escape from an inmate release program. *Id.* at 7, 10–12. The PSR calculated that with the Armed Career Criminal enhancement, Mr. Jimenez's offense level was 33, his criminal history category was VI, and thus, he faced 235–293 months. *Id.* at 17.

Mr. Jimenez objected to the PSR, arguing, among other things, that his prior convictions for non-residential burglary and escape did not constitute "violent felonies" under ACCA. [CR Doc. 39] at 1–2. The Honorable Robert C. Brack, United States District Judge, overruled the objections on May 16, 2005. [CR Doc. 43]. Specifically, he found that "Section 924(e)(2) makes no distinction between different types of burglary offenses, such as commercial burglary and burglary of a dwelling. Including his prior conviction for commercial burglary, therefore, Mr. Jimenez has three prior burglary convictions that qualify as violent felonies under Section 924(e)(2)." *Id.* at 4 (citing *United States v. Lujan*, 9 F.3d 890, 893 (10th Cir. 1993)). Judge Brack adopted the PSR's total offense level of 33, criminal history category of VI, and

guidelines range of 235–293 months. *Id.* at 5. Ultimately, on May 16, 2005, he sentenced Mr. Jimenez to 235 months' imprisonment. *Id.* at 6; [CR Doc. 45] at 2.

Mr. Jimenez appealed on grounds unrelated to his sentence. The Tenth Circuit Court of Appeals affirmed his conviction on December 5, 2006. [CR Doc. 50]. The Supreme Court denied Mr. Jimenez's petition for a writ of certiorari on March 19, 2007. [CR Doc. 52]. Mr. Jimenez's first motion under § 2255 was denied on April 28, 2009. [CR Doc. 69]. However, on June 3, 2016, the Tenth Circuit Court of Appeals granted him leave to file this second motion under § 2255. [CR Doc. 76].

## **Motions under § 2255 and *Johnson v. United States***

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court" "to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called residual clause of the definition of "violent felony" in the ACCA was unconstitutionally vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that —
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves." *Id.* That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that its ruling in *Johnson* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

### Mr. Jimenez's convictions for New Mexico non-residential burglary do not qualify as violent felonies.

Mr. Jimenez's designation as an armed career criminal was based on four prior felony convictions: three for non-residential burglary in New Mexico, NMSA 1978 § 30-16-3(B), and one for escape from an inmate release program. [CR Doc. 43]; PSR at 7, 10–12. Mr. Jimenez argues that his sentence should be vacated because none of these convictions qualifies as a violent felony but for the unconstitutionally vague residual clause. The United States admits that

4

it has no authority indicating that escape qualifies as a violent felony. [Doc. 8] at 12.[1]  It hangs its hat entirely on the burglary convictions. *Id.*

Mr. Jimenez argues that his convictions for non-residential burglary could have qualified as violent felonies (and, thus, counted toward his armed career criminal designation) *only* under the now-invalidated residual clause, entitling him to be resentenced.  The United States argues that the non-residential burglary convictions qualified as violent felonies under the so-called enumerated clause of the ACCA's definition of violent felony ("[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that— . . . (ii) is burglary, arson, or extortion . . . ." § 924(e)(2)(B)).[2]  Therefore, the United States argues that *Johnson* does not apply to this case and Mr. Jimenez should not be resentenced.

I agree with Mr. Jimenez.  New Mexico's burglary statute, § 30-16-3, is divisible into two subsections: residential burglary (subsection A) and non-residential burglary (subsection B). However, subsection B itself is not further divisible.  Instead, subsection B is overbroad, and therefore, it does not constitute "burglary" as enumerated in the ACCA.

To determine whether a past conviction qualifies as one of the offenses enumerated at § 924(e)(2)(B)(ii), courts compare the elements of the crime of conviction with the elements of the "generic" version of the listed offense—*i.e.,* the offense as commonly understood.  It is well-established that the prior conviction qualifies as an ACCA predicate if, but only if, its

---

[1] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, which is case number 16-cv-0661 RB/SMV.
[2] Mr. Jimenez argues that the non-residential burglary convictions do not fall under the so-called "elements" (or "force") clause (to wit: "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  § 924(e)(2)(B).). [Doc. 1] at 3, 4.  The United States does not dispute this; it argues only that the convictions qualified under the "enumerated" clause.  *See* [Doc. 8] at 12.

elements are the same as, or narrower than, those of the generic offense. *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016). In enumerating those offenses, Congress referred only to their "generic" versions—not to all variants of the offenses. *Id.* at 2248 (citing *Taylor* v. *United States*, 495 U.S. 575, 598 (1990)). To determine whether a prior conviction is for generic burglary, courts apply what is known as the categorical approach: We focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case. *Id.* (citing *Taylor*, 495 U.S. at 600–01).

For example, in *Descamps* v. *United States*, the Supreme Court compared a California burglary statute ("which provide[d] that a 'person who enters' certain locations 'with intent to commit grand or petit larceny or any felony is guilty of burglary'") with the generic definition of burglary ("an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."). 133 S. Ct. 2276, 2279, 2283 (2013) (quoting *Taylor*, 495 U.S. at 599 (for the generic definition of burglary)). The Court found that the California statute swept more broadly than generic burglary because it criminalized entering a location—even if lawfully—with the intent to steal, whereas generic burglary required an unlawful or unprivileged entry. *Id.* at 2283. Accordingly, no conviction under that law could count as an enumerated ACCA predicate, even if the defendant in fact had made an illegal entry and so committed burglary in its generic form. *Id.*

Some statutes, however, have a more complicated (or "divisible") structure, making the comparison of elements harder. *Mathis*, 136 S. Ct. at 2249. A single statute may list elements in the alternative and thereby define multiple crimes. Suppose, for example, that the California

6

law noted above had prohibited "the lawful entry or the unlawful entry" of a premises with intent to steal, so as to create two different offenses, one more serious than the other. If the defendant were convicted of the offense with unlawful entry as an element, then his crime of conviction would match generic burglary and count as an ACCA predicate; conversely, the conviction would not qualify if it were for the offense with lawful entry as an element. A sentencing court must discern which of the alternative elements listed—lawful entry or unlawful entry—was integral to the defendant's conviction (that is, which was necessarily found or admitted). *Id.* To address that need, courts begin with a "modified categorical approach" for statutes having multiple alternative elements. *Id.* Under that approach, a sentencing court looks to the record of conviction (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. Then, the court is able to compare the elements of that crime, as the categorical approach commands, with the elements of the relevant generic offense.[3] *Id.*

The Supreme Court has provided guidance for determining whether a statute is indivisible or divisible and, thus, whether to implement the modified categorical approach first or proceed directly to the categorical approach. *Mathis*, 136 S. Ct. at 2256–57. The central question is whether the statute lists multiple *elements* disjunctively, thereby creating multiple

---

[3] On at least three occasions, the Tenth Circuit Court of Appeals has applied the modified categorical approach to determine whether New Mexico's non-residential burglary statute qualified as a violent felony under the ACCA. *United States v. Silva*, 608 F.3d 663, 665–69 (10th Cir. 2010); *United States v. King*, 422 F.3d 1055, 1057–58 (10th Cir. 2005); *United States v. Lujan*, 9 F.3d 890, 892–93 (10th Cir. 1993). Each time it has held that the statute is overbroad; it is not consistent with generic burglary. Nevertheless, the court went on to look at evidence of the defendant's underlying conviction to "determine the character of [his] burglary." *Silva*, 608 F.3d at 665–66. All of these decisions, however, pre-date *Mathis*. I conclude that application of the modified categorical approach to New Mexico's non-residential burglary statute, § 30-16-3(B), is no longer permissible under *Mathis*.

different crimes (i.e., a divisible statute, triggering the modified categorical approach), or whether it enumerates various factual *means* of committing a single element (i.e., an indivisible statute, requiring the categorical approach). *Id.* at 2249–50. In order to determine whether a statute lists alternative means or elements, courts should look at the plain language of the statute. If statutory alternatives carry different punishments, then they must be elements (and, thus, the statute divisible, triggering the modified categorical approach). *Id.* at 2257 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

Additionally, state court decisions may also be of assistance to sentencing courts. The Iowa Supreme Court, for example, had held that the various premises listed in the burglary statute at issue in *Mathis* were "'alternative methods' of committing one offense, such that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Id.* at 2256 (citing *Iowa v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). "When a ruling of that kind exists, a sentencing judge need only follow what it says." *Id.*

Next, "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (citing *United States v. Howard*, 742 F.3d 1334, 1338 (11th Cir. 2014)). Such a statute, therefore, would be indivisible, and the sentencing court would be restricted to applying the categorical approach. *Id.*

Finally, if state law fails to provide clear answers, sentencing judges may "peek" at the record of a prior conviction itself for "the sole and limited purpose" of determining whether the listed items are means or elements. *Id.* at 1256–57.

At bottom, the dispute here is whether Mr. Jimenez's statue of conviction, § 30-16-3(B), is divisible (thus triggering the modified categorical approach) or indivisible (thus triggering the categorical approach). [Doc. 1] at 4–6; [Doc. 8] at 7–12; [Doc. 14] at 1–4. The United States concedes that if subsection B is indivisible, then it is overbroad and does not match the definition of generic burglary. [Doc. 8] at 6 ("[Section] 30-16-3(B) is broader than generic burglary because it encompasses unlawful entry into not just a building or structure, but a 'vehicle, watercraft, or aircraft.'") (brackets omitted) (quoting *Mathis*, 136 S. Ct. at 2250). Of course, if subsection B is overbroad, then Mr. Jimenez's statute of conviction would not qualify as a violent felony under the enumerated clause. It would qualify only under the residual clause, and Mr. Jimenez would be entitled to resentencing. However, the United States argues that subsection B is divisible (and triggers the modified categorical approach) because it contains a list of alternative elements. [Doc. 8] at 9–12.

Mr. Jimenez's statute of conviction reads:

> **Burglary.**
>
> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>
> **B.** Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

NMSA 1978 § 30-16-3.

Based on *Mathis* and the plain language of the statute, I find that § 30-16-3 is divisible. The alternative elements are separated in subsections A and B.  Subsection A is reserved for burglary of a "dwelling house," a third degree felony.  Subsection B is reserved for non-residential burglary, a fourth degree felony.  Because I find the statue to be divisible, my examination of the state court documents is limited only to determining whether Mr. Jimenez was convicted under subsection A or subsection B.  *See Mathis*, 136 S. Ct. at 2249 (describing the modified categorical approach).

The charging documents indicate that Mr. Jimenez was charged with burgling a church, a restaurant, and a liquor store.  *See* [Doc. 8-1] at 1 (criminal information alleging burglary of the First Spanish Assembly of God), [Doc. 8-2] at 1 (criminal information alleging burglary of the Hamburger House), [Doc. 8-3] at 1 (criminal information alleging burglary of the Quality Liquor Store).  None of these is a dwelling house.  Therefore, I find that Mr. Jimenez was convicted under subsection B and not subsection A.

Comparing the elements of subsection B with the generic definition of burglary, I find that § 30-16-3(B) is overbroad.  In fact, the government concedes the point.  [Doc. 8] at 6.  There is no dispute over the generic definition of burglary: Congress meant a crime "contain[ing] the following elements: an unlawful or unprivileged **entry into a building or other structure**, with intent to commit a crime."  *Mathis*, 136 S. Ct. at 2248 (emphasis added) (internal ellipsis omitted) (quoting *Taylor*, 495 U.S. at 598); *see* [Doc. 8] at 4 (United States' reference to the same generic definition); [Doc. 1] at 4–5 (Mr. Jimenez's reference to the same generic definition).  Subsection B provides that "[a]ny person who, without authorization, **enters any**

**vehicle, watercraft, aircraft or other structure, movable or immovable**, with intent to commit any felony or theft therein is guilty of a fourth degree felony." § 30-16-(B) (emphasis added). Subsection B is overbroad because it encompasses unlawful entries into more than just "buildings or other structures." It also encompasses unlawful entries into vehicles and watercrafts. *See Mathis*, 136 S. Ct. at 2250.

This should be the end of my analysis. The United States, however, urges another analytical step. The United States argues that subsection B itself is further divisible. [Doc. 8] at 9–12. The government argues that subsection B sets out alternative elements, that is, alternative crimes. The government urges the Court to examine the charging documents to determine whether Mr. Jimenez was convicted of burgling a vehicle (which would not match the generic definition of burglary), a watercraft (which also would not match), an aircraft (which also would not match) or an "other structure" (which could match). [Doc. 8] at 11. Because the charging documents show that Mr. Jimenez was convicted of burgling structures (i.e., a church, a restaurant, and a liquor store), the United States urges that his convictions were for generic burglary and, thus, constitute enumerated violent felonies precluding resentencing under *Johnson*. *Id.*

To support its position, the government follows the guidance outlined in *Mathis* for determining whether the alternatives listed in a statute are elements (making the statute divisible) or means (making the statute indivisible). [Doc. 8] at 9–11. First, the government concedes that the statutory penalties are the same for any of the alternatives listed in subsection B, *id.* at 9, which would tend to show that they are means rather than elements. Second, the government

11

admits that it "has been unable to locate any New Mexico state case addressing whether the alternatives listed in § 30-16-3(B) are elements or means of committing [non-residential] burglary." [Doc. 8] at 9.

Next, the government argues that the alternatives listed in subsection B ("any vehicle, watercraft, aircraft or other structure, movable or immovable") do not constitute a list of "illustrative examples." *Id.* at 9–11. In making its argument, the government starts with and then attempts to distinguish *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014). [Doc. 8] at 9–11. In *Howard*, the Eleventh Circuit Court of Appeals held that Alabama's burglary statute contained a non-exhaustive list of illustrative examples and, thus, was indivisible and permitted application of the categorical approach only. The Alabama statute provided that "a person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." *Id.* at 1348. Alabama law further defined "building" with a list that "*include[d]* any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein." Of course, vehicles, aircraft, and watercraft fall outside the building-or-structure element of generic burglary. *Id.* So, the court had to determine whether the list of alternatives was a list of alternative means of committing one crime (rendering the statute indivisible) or a list of alternative elements (rendering the statute divisible).

The court looked to *Descamps*, which had boiled divisibility (i.e., means or elements) down to "whether the 'statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile.'" *Howard*, 742

12

F.3d at 1348 (quoting *Descamps*, 133 S. Ct. at 2281). Ultimately, the *Howard* court concluded that nothing in the Alabama statute "suggest[ed] its definition of 'building' [wa]s drafted in the alternative, but instead include[d] a 'non-exhaustive list of things that f[e]ll under that definition.'" *Id.* Significant to the court was the use of the word "includes" before these alternatives, which signified a "non-exhaustive list of examples to clarify the meaning of the term," not alternative elements. *Id*. (quoting *Jean v. Nelson*, 863 F.2d 759, 777 (11th Cir. 1988).

Applying the lesson of *Howard* to Mr. Jimenez's statute of conviction, and apparently relying on the absence of the word "includes," the United States argues that "§ 30-16-3(B) contains a definitive list of items which 'effectively creates several different crimes.'" [Doc. 8] at 10 (quoting *Howard*, 742 F.3d at 1347). In other words, the government argues, the New Mexico statute "sets out one or more elements of the offense in the alternative," i.e., "vehicle, watercraft, aircraft, *or* other structure." *Id.* (quoting § 30-16-3(B) (emphasis added)). I am not persuaded.

I find that subsection B does, in fact, contain a non-exhaustive list of illustrative examples, i.e., alternative means—not elements—for several reasons.

First, as the government concedes, the statutory penalty is the same for all of the alternatives listed in subsection B. This tends to show that the list is one of means, not elements. Second, the organization of the statute indicates that it is divisible into only subsections A and B and that subsection B is not further divisible. The state legislature obviously knew that it was separating residential burglary (in subsection A) from all other burglaries (in subsection B). If it had intended to create other additional crimes, it would have drafted further subsections.

13

Third, the New Mexico Supreme Court has strongly suggested that the list of alternatives in subsection B is a non-exhaustive list of alternative means. In *New Mexico v. Office of the Public Defender*, the New Mexico Supreme Court very thoroughly reviewed the history of its burglary statute to ultimately hold that the lower courts had been too liberally interpreting the list of prohibited spaces in subsection B (i.e., "vehicle, watercraft, aircraft or other structure, movable or immovable"). 2012-NMSC-029, 285 P.3d 622. In describing the current iteration of the statute, the Court stated that it "divides the crime into [two] different grades, with the entry of a dwelling being a third degree felony while entry into any of the other enumerated objects being a fourth degree felony." *Id.* at ¶ 13. The fact that the Court described only two "grades" tends to show that subsection B itself is not divisible.

I also find it significant that the Court employed the statutory interpretation canon *ejusdem generis*. *Id.* at ¶¶ 29–30. This canon counsels "that where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *Id.* at ¶ 29 (internal quotation marks omitted). The Court expressly overruled a previous decision rejecting the canon and, instead, held that "ejusdem generis is an important rule of construction to be used when interpreting the outer limits of prohibited space by the burglary statute." *Id.* at ¶ 30. The Court pointed out that the New Mexico legislature had, in fact, codified the *ejusdem generis* rule:

> In considering the text of a statute or rule . . . and the context in which the statute or rule is applied, the following aids of construction may be considered in ascertaining the meaning of the text: (1) the meaning of a word or phrase may be limited by the

> series of words or phrases of which it is a part; and (2) the meaning of a general word or phrase following two or more specific words or phrases may be limited to the category established by the specific words or phrases.

*Id.* at ¶ 31 (quoting NMSA 1978, § 12-2A-20(A)). The Court's explicit application of *ejusdem generis* to the very list of alternatives at issue in this case evidences New Mexico's understanding that it is a non-exhaustive list of illustrative examples. Just as the non-exhaustive list of illustrative examples in *Howard* had "includes" at the beginning, the non-exhaustive list of illustrative examples in subsection B has "or other structure" at the end. These phrases serve the same purpose in both statutes: to signal a non-exhaustive list of illustrative examples. The modified categorical approach should not be applied to subsection B.[4]

## Conclusion

Although § 30-16-3 is divisible into subsections A (residential burglary) and B (non-residential burglary), subsection B itself is not further divisible. The Supreme Court has been explicit about the narrow application of the modified categorical approach: "It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." *Mathis*, 136 S. Ct. at 2254. Applying the modified categorical approach to subsection B would do just that. Subsection B is not divisible. It is overbroad. Mr. Jimenez should be resentenced.

---

[4] I reject the United States' invitation to find that New Mexico law is unclear as to whether the list of alternatives at subsection B is one of elements or means. [Doc. 8] at 11–12. If state law were unclear, I could "peek" at the record of conviction "for the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis*, 136 S. Ct. at 2256–57 (internal quotation marks and brackets omitted). State law, however, is clear. The list of alternatives is one of means, not elements. Looking to Mr. Jimenez's record of conviction is neither necessary nor permissible.

**IT IS THEREFORE RECOMMENDED** that Defendant Marcello Jimenez's Motion to Correct Sentence under 28 U.S.C. § 2255 [CR Doc. 77; CV Doc. 1] be **GRANTED** and that he be resentenced as expeditiously as possible.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**